IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:19 CR 00465 |
| Plaintiff | : | JUDGE PATRICIA ANN GAUGHAN |
| vs. | : | |
| MICHELLE N. MACKLIN, | : | MICHELLE N. MACKLIN'S SENTENCING MEMORANDUM |
| Defendant | : | |

Now comes Defendant, Michelle N. Macklin, through attorney, Attorney, John P. Luskin, and respectfully submits for the Court's consideration factors relevant to the sentence to be imposed upon a defendant pursuant to 18 U.S.C., § 3553(a), 18 U.S.C. §3582 (a), 18 U.S.C. §3661 and additional facts relevant to the instant case and the defendant's history.

## I. LAW

After the Federal Sentencing Guidelines were made advisory by the United States Supreme Court, as it relates to the sentencing of the defendant, it is respectfully submitted that in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held those sentencing guidelines are advisory, not mandatory, and that other factors set forth in 3553(a) must be considered in fashioning the appropriate sentence. See Booker at 790 (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determination).

In United States v. Ranum, 353 F. Supp.2d 984 (E.D. Wis. 2005) the court imposed a sentence *lower* than that recommended by Guidelines, stating that, while the court agreed that it must seriously consider Guidelines, **"Booker is not an invitation to do business as usual."**

(Emphasis added).

In <u>United States v. Myers</u>, 353 F. Supp.2d 1026 (S.D. Iowa, 2005) the Court logically stated *"[*t]o treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the guideline range would be presumptively unreasonable in absence of clearly identified factors . . . making the Guidelines, in effect, still mandatory."

The Booker decision essentially establishes that the guidelines should merely be treated as one of the factors to be considered. See <u>U.S. v. Booker</u>, at 790. These factors include:

> 1. The nature and circumstances of the offense and the history and characteristics of the Defendant.
> 2. The need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.
> 3. The kinds of sentences available.
> 4. The advisory guideline range.
> 5. Any pertinent policy statements issued by the Sentencing Commission.
> 6. The need to avoid unwarranted sentence disparities.
> 7. The need to provide restitution to any victims of the offense.[1]

**B. 18 U.S.C. Section 3553(a)**

Section 3553(a) states that the nature and circumstances of the offense and the history and characteristics of the defendant are to be considered in determining a sentence. Further, "the court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes [of sentencing]." 18 U.S.C. Section 3553(a)(emphasis added).

---

[1] `See: Note, Booker and Our Brave New World:` *`The Tension Among`* `the Federal Sentencing Guidelines, Judicial Discretion, and a Defendant's Constitutional Right to Trial by Jury`, 53 Cleve. St. L. Rev. 657 (2005-06).

In determining the particular sentence, courts must consider all the factors set forth in: 18 U.S.C. 3553 states in part:

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
    **(2)** the need for the sentence imposed--
        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        **(B)** to afford adequate deterrence to criminal conduct;
        **(C)** to protect the public from further crimes of the defendant; and
        **(D)** to provide the defendant with needed educational or vocational training, medical care, or other Correctional treatment in the most effective manner;
    **(3)** the kinds of sentences available;
    **(4)** the kinds of sentence and the sentencing range established for--
        **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
            **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and are in effect on the date the defendant is sentenced; or
        **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
    **(5)** any pertinent policy statement--
        **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [FN1]
    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Thus, Section 3553 (a) places the guidelines on equal footing with the other factors and the overriding principle and basic mandates of 3553(a) require district courts to impose a sentence"sufficient, but not greater than necessary, . . . " while giving consideration to "the nature and circumstances of the offense and the history and characteristics of the defendant", i.e., retribution, deference, incapacitation, and rehabilitation, the defendant, Carl Mileca, hereby presents the following for the Court's consideration in determining the appropriate sentence to comply with the goals, particularly with respect to the defendant's limited role in the drug conspiracy in this case.

## II. INTRODUCTION

### A. Procedural History

On August 2, 2019, the defendant, Michelle N. Macklin, was named in a one-count Information that was filed in the United States District Court for the Northern District of Ohio, Eastern Division.

Count 1 charged that from August 8, 2015 through September 17, 2017, the defendant stole the property of the United States exceeding $1,000 in value belonging to the Department of Veterans Affairs (VA). Specifically, the defendant fraudulently claimed and received overtime compensation from the VA with a value of approximately $17,113, in violation of Title 18 U.S.C. § 641.On October 23, 2019, the defendant pled guilty to Count 1 of the Information.

From August 8, 2015, through March 21, 2018, the defendant, an employee of the United States Department of Veterans Affairs (VA), fraudulently claimed and received overtime compensation from the VA. Specifically, Michelle Macklin was employed by the VA Office of Community Care (OCC) at the Cleveland VA Medical Center as a Voucher Examiner. The VA OCC granted overtime compensation to employees strictly for computer-based clinical tracking, clinical reviews, and claims processing since approximately 2014.

After reviewing the Fee Basis Claims Processing System, Employee Production On-Demand Reports, time sheets, employee emails, and Personal Identity Verification card logs, it was determined that the defendant falsely claimed to work 1,004 overtime hours from 2015 to 2018. The defendant's overtime hours of production, where actual work was performed, totaled 348 hours. This means that 656 overtime hours that she claimed were done so fraudulently. As a result, she received a total of $17,113 in compensation for the fraudulently claimed overtime hours.

**B. Plea Agreement:**

There is a Rule 11(c)(1)(B) plea agreement in this case. Pursuant to the plea agreement, the parties agree to recommend that the Court impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth below. Neither party will recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence.

The parties agree that the following calculation, using the current advisory Sentencing Guidelines Manual, represents the correct computation of the applicable offense level:

That the base level guideline is 6 with an additional 4 levels for a loss of $15,000.00 to $40,000.00 the total amount of loss is $17, 113.00. This puts the guideline level at 10 before acceptance of responsibility.

### C. SOCIAL HISTORY:

Michelle Nicole Macklin (nee: Singleton) was born on August 8, 1976, in Cleveland, Ohio, to the marital union of Brenda Brown and Marcellous Singleton. The defendant's father passed away when she was approximately 10-years-old. The defendant's mother married David Brown approximately three years later. The defendant attributed her parents and step-father with her upbringing. She recalled growing up in Warrensville Heights, Ohio, in what she described as a "nice" neighborhood. The defendant denied the presence of violence, substance abuse or neglect in the home. Macklin reported that her basic needs were always met.

The defendant's mother resides in Warrensville Heights, Ohio, and is a retired employee of University Hospitals, where she served as an Intake Coordinator. Prior to the death of the defendant's stepfather, he worked for the Cuyahoga Metropolitan Housing Authority. The defendant reported that her parents provided financial support for her during her formative years.

The defendant denied any financial hardships in her home. Her basic needs were always met.The defendant grew up with three siblings; one brother, one maternal half-sister, and one maternal half-brother. The defendant reported that she has three half-siblings on her father's side; however, she is not in touch with them. Macklin's brother, Michael Singleton, passed away in 1994. Her maternal half-sister, Crystal Jackson, resides in Garfield Heights, Ohio, and owns a

daycare facility. The defendant's half-brother, David Brown, resides in Warrensville Heights, Ohio, and is employed at a daycare. The defendant reported that she is closest to her mother and her sister. Macklin's mother expressed unwavering support for her daughter during her collateral interview.

The defendant married Marlon Macklin on December 21, 2006. The couple separated in 2008 and their divorce finalized in 2012. Macklin reported that she is not currently in a relationship. The defendant has five children.

The defendant reported that she filed for child support from the fathers of her four oldest children. Macklin's two oldest children are now over 18-years-old and no longer have active child support cases. There is not a child support order for the defendant's youngest daughter, Countess Banks; however, Darrion Banks reportedly provides the defendant with financial support. Macklin is a lifelong resident of the Northern District of Ohio. She reported residing in the Cleveland, Ohio, area her entire life, other than during periods of training/military assignment ordered by the United States Army. The defendant currently resides at 5699 E. 139th Street in Garfield Heights, Ohio, with her three youngest children.

### D. Military History

Macklin enlisted in the United States Army in 2006. Macklin reported that she enlisted in the military to try to gain education and stability for the betterment of her children.

Macklin attended basic training at Fort Leonard Wood, near St. Robert, Missouri. Following graduation, Macklin attended Advanced Individual Training at Fort Sam Houston, in San Antonio, Texas. The defendant was then stationed at Fort Carson near Colorado Springs, Colorado.

Once the defendant was assigned to Fort Carson in Colorado, she reported that she became very discouraged after learning that her children were not permitted to reside with her. Macklin reported that she spent the next two years trying to discharge from the U.S. Army. During her military service, the defendant's children resided with her mother in Cleveland, Ohio.

In 2008, the defendant was discharged from the United States Army.

The defendant reported that she was diagnosed with depression in 2007 while serving in the United States Army. In 2017, the defendant was reportedly diagnosed with anxiety by Dr. Deepika Sastry at the Louis Stokes Cleveland VA Medical Center in Cleveland, Ohio. The defendant is currently prescribed escitalopram (10 mg 2x daily) and BuSpar (5 mg 3x daily). The defendant reported feeling mentally stable on this medication regimen.

Macklin graduated from Warrensville Heights High School in Warrensville Heights, Ohio, in 1994. Following high school, Macklin attended Remington College and earned her associate degree in criminal justice.

The defendant denied having any learning disabilities. She does not have any issues reading, writing, or speaking English.

Macklin reportedly earned a Heath Care Specialist certification and an Emergency Medical Technician (EMT) license while stationed at Fort Carson.

Counsel is of the humble opinion that if done in this fashion this Honorable Court's sentence will achieve the goals of sentencing under section 3553(a).

### E. THE DEFENDANT HAS ACCEPTED RESPONSIBILITY FOR HER ACTIONS AND SHOWS EXTREME REMORSE.

The defendant's acceptance of responsibility statements is set forth in the Pre-sentence Investigation Report. In addition to accepting responsibility for the conduct, the defendant regrets the choices made and is also extremely remorseful. As a matter of fact, there has been extreme remorse throughout this case. The defendant understands the implication of the unlawful actions and its effect in her life and her family. She has had several months to reflect on the consequences of this conduct and it is unlikely that any criminal activity will ever occur in the future. There is a realization that such conduct will never occur again, there will continue a challenge to prove herself for the rest of the days of life.

In looking at the nature and circumstances of the present offense and the history of the defendant, the Court should evaluate the following factors:

1.) Michelle Macklin has accepted responsibility for his actions and in an expeditious fashion. He understands the seriousness of the crime he has committed and expressed his sincere remorse and apology.

2.) There has cooperated with the authorities by providing complete and truthful information of his involvement to the best of her knowledge. The defendant might be eligible for safety valve under USSG §5C1.2.

Michelle Macklin requests this Court to consider her remorse, characteristics and familial life during her youth and formative years. The she has served her country and continued to do so with the Vetrens Administration. Although, this is a serious action, the nature and circumstances are somewhat unique and as such a term of probation would not demean the

seriousness of the offense. We beg this Honorable Court to take all these unique factors into account when considering the appropriate sentence.

       D. The risk of recidivism of the defendant

The second factor to be evaluated by the Court is to assess the need for the sentence imposed and the risk of recidivism of the defendant.

Michelle Macklin does not believe she is a risk to re-offend. This statement may sound hollow to the court based on his past, but she offers that with a new found resolve and to act more like a mature individual she hopes and prays that with the proper resolve, a strong foundation in life and with her children as a guidance.

She truly regrets her poor judgement. She also wants to provide a better life for herself and her family and become a productive member of society. Therefore, at least two of the goals of sentencing under section 5335(a) impacting on society and defendant have been achieved --- deterrence and rehabilitation.

### III. SENTENCING

Although the defendant is not minimizing the seriousness of the offense, it should also be stressed, and can be easily ascertained, that defendant has not had contact with law enforcement.  Her participation in this action was to fully cooperate with the Government and Case Agents, he now faces the full impact of the United States Government in which has a far greater consequence than that of a State Court.  The defendant might be eligible for safety valve under USSG §5C1.2. It is respectfully submitted that sentencing Macklin to probation for a period of time commensurate with her actions, remorse, acceptance of responsibility.

Macklin requests that the Court look to the kinds of sentences available. As noted above, the defendant requests this Court to consider a sentence that is sufficient, but not greater than necessary to fulfill the requirements of 18 U.S.C., section 3553(a). While looking to the nature and circumstances of the offense, this Court can conclude that;

      1) she has timely accepted responsibility for her actions and
      2) there was mitigating circumstances in the theft of the $17, 133.00 in this case and
      3) her actions of pleading to an information, and pleading to said information.

In reviewing the history and characteristics of the defendant, this Court can resolve itself of the fact that Macklin,

      1) is remorseful,
      2) is resilient in her desire to better herself.

In determining the kinds of sentences available, this Court is not limited in what factors it may consider. The defendant might be eligible for safety valve under USSG §5C1.2;

Michelle Macklin can be rehabilitated and she is not beyond saving. This request in no way means to downplay the seriousness of the offense herein, but the crime involved would not be diminished and the sentence imposed by the Court would still fit the crime.

### IV. CONCLUSION

For the above stated reasons, it is respectfully requested that this Court impose a fair and just sentence, a sentence that would not demean the seriousness of the offense, yet one that is wise and just for the betterment of Michelle Macklin.

-11-

Respectfully submitted,

/s/ John P. Luskin

JOHN P. LUSKIN
Attorney for Defendant
5252 Meadow Wood Blvd.
Suite 121
Cleveland, Ohio 44124
(216) 513-6099
Supreme Court No. 0040158

SERVICE

A copy of the foregoing Sentencing Memorandum was provided to Justin E. Herdman, Esq.  United States Attorney for the Northen District of Ohio, Brian McDonough, Esq. Assistant United States Attorneys was forwarded via the Court's Electronic Filing System this 29th day of February 2020.

/s/ John P. Luskin

JOHN P. LUSKIN
Attorney for Defendant